IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 25, 2005 Session

**STATE OF TENNESSEE v. KEITH LATRELL JACKSON**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-D-2175      Seth Norman, Judge**

---

**No. M2004-00562-CCA-R3-CD - Filed April 12, 2005**

---

A Davidson County jury found the Defendant, Keith Latrell Jackson, guilty of possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone and of possession of a firearm with the intent to employ it in the commission of or escape from an offense. The trial court sentenced the Defendant to an effective sentence of thirty-six years in prison. On appeal, the Defendant contends that: (1) the trial court erred when it denied his motion to suppress; (2) the evidence is insufficient to support his convictions; (3) the trial court erred in admitting the testimony of a surveyor pertaining to the use of GPS in determining the distance between the location of the offense and the real property that comprises Wharton School; and (4) the trial court erred when it sentenced him. After thoroughly reviewing the record and the applicable authorities, we reverse the Defendant's conviction and sentence for possession of a firearm with the intent to employ it in the commission of or escape from an offense, and we affirm the Defendant's conviction and sentence for possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part and Reversed in Part**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Kenneth Quillen, Nashville, Tennessee, for the Appellant, Keith Jackson.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and John Zimmerman and Christina Goodson, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

In October of 2001, a Davidson County Grand Jury indicted the Defendant for possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone and possession of a firearm with the intent to employ it in the commission of or escape from an offense. A Davidson County Jury convicted the Defendant of both of these charges. The trial court sentenced the Defendant to thirty-six years, at 100%, for the possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone and to three years, at 35%, for the possession of a firearm with the intent to employ it in the commission of or escape from an offense. The trial court ordered that the sentences be served concurrently.

The following evidence was presented at the Defendant's trial: J.D. Jones, a lieutenant with the Metropolitan Police Department, testified that, on September 28, 2001, he and other officers executed a search warrant for an apartment, located in an apartment complex, at 1612 16th Avenue, Nashville. The officer said that he was wearing a vest and a raid jacket that identified him as a police officer, and he and the other officers announced their presence by yelling that they were executing a search warrant. Lieutenant Jones testified that, as he was approaching the apartment, he noticed four men, who appeared to be gambling, on the stoop of an apartment located in front of the apartment that the officers were searching. As the other officers went to search the back apartment, he attempted to control the four men who were on the stoop. As he did so, the men walked away, while placing objects in their pockets. The lieutenant requested that another officer assist him control these men, and, at that time, the Defendant ran away from the officer. Lieutenant Jones drew his gun and told the Defendant to get on the ground, and, after the Defendant ran approximately fifty yards, the Defendant returned to the apartment.

Lieutenant Jones testified that Officer Johnson came outside to assist him and Officer Johnson searched the Defendant. The lieutenant noticed a Monte Carlo, that had a temporary tag, parked near his police car, and he asked if anyone had the keys to that car. He testified that none of the men said that they knew anything about the vehicle. Lieutenant Jones later discovered that the temporary tag was issued to the Defendant's mother. The lieutenant attempted to unlock the Monte Carlo using keys found on the Defendant, and, after he determined that the keys successfully unlocked the car, he re-locked the car and called for a K-9 unit to search the car for the presence of narcotics.

Lieutenant Jones testified that he was present for the K-9 search of the Monte Carlo. He said that the police dog alerted for the presence of narcotics by scratching on the passenger side door. Lieutenant Jones testified that he and the other officers opened the vehicle and found approximately $38,000 in the right passenger seat. He said that the dog also alerted the officers to the console inside the vehicle, and the officers found a bag that contained between fifty and sixty grams of cocaine. Lieutenant Jones testified that he also discovered a gun between the console and the driver's seat, and electronic scales that had cocaine residue were recovered from the console. He testified that, under the seats of the vehicle, he found dryer sheets, which are typically used to mask the scent of drugs. The lieutenant said that the Defendant did not tell him where the Defendant had acquired $38,000, and the Defendant said that he was unemployed.

Lieutenant Jones testified that he also recovered several papers and a Sprint cell phone box with a bill from the car. He said that the Sprint cell phone bill was for an account held in the Defendant's name. The lieutenant found three cell phones either on the Defendant's person or in the car. Lieutenant Jones stated that, based on his experience, people involved in drug trafficking use multiple cell phones to avoid detection. Lieutenant Jones testified that there was a receipt in the car for its purchase. He said that the receipt was from an auto sales store, and it described the vehicle as a black Chevrolet Monte Carlo that was purchased for $5900 in cash and paid for by the Defendant. The receipt was signed by Donna Jackson, the Defendant's mother.

On cross-examination, Lieutenant Jones testified that the search warrant was for apartment C, the unit that was the farthest away from the street. He said that he believed the Defendant had two cell phones on his person and one in the vehicle, but he admitted that there may have been only one on the Defendant. He testified that there were several keys on the key chain he obtained from the Defendant, and there could have been keys to three different cars.

Samuel Johnson, an officer with the Metro Police Drug Task Force, testified that he was one of the officers that executed a search warrant at 1612 16th Avenue North, apartment C, on September 28, 2001. He said that apartment C was located in a building that contained several apartments. The officer said that, when he arrived at the apartment building, he saw four men on the front porch of another, nearby apartment. He testified that he wore a police uniform, and it was his responsibility to enter and secure apartment C for the other officers. Officer Johnson testified that, while he went to apartment C, Lieutenant Jones approached the four men on the nearby porch. Later, he assisted Lieutenant Jones by searching the Defendant, to ensure officer safety, and he noticed a bulge in the Defendant's pocket of his pants. Officer Johnson testified that the Defendant told him that the bulge was money, and the Defendant gave the officer permission to remove the money. The officer explained that he removed two bunches of money totaling $5921, $2000 of which was wrapped in a white grocery bag secured by rubber bands. He testified that the Defendant also had keys and a driver's license in his pocket, and he removed all of these items and placed them on the sidewalk. Officer Johnson testified that he was present when Lieutenant Jones inquired about the Monte Carlo, and no one responded.

Officer Johnson testified that the K-9 officer and dog arrived to examine two vehicles, one in front of the apartment and the black Monte Carlo located on the street. He said that the dog gave a positive alert to the presence of the odor of narcotics. He said that the dog scratched the door of the Monte Carlo, and Lieutenant Jones opened the door with the Defendant's keys. The dog again alerted positively to the presence of narcotics in the console area, where they found a bag containing approximately 59 grams of cocaine. The officer also found in the car drug scales, a .9 millimeter handgun, a bag containing about $36,000, dryer sheets, some baggies, and paperwork on the vehicle. He testified that the money seized totaled $43,886. Officer Johnson testified that the Defendant did not live at the address where he executed the search warrant.

On cross-examination, Officer Johnson testified that his notes indicated that only one cell phone was taken from the Defendant. He agreed that, when he arrived at the location, the Defendant

was two doors down from apartment C, on the corner stoop. He said that he did not find any drugs on the Defendant's person.

Ken Spencer, a sergeant with the Metro Police Department, testified that he was the K-9 handler in this case, and he assisted in the execution of the search warrant at 1612 16th Avenue. He said that he and his drug K-9, named Rocky, were trained through the United States Police K-9 Association. He explained that he and Rocky had to be re-certified every year as a K-9 handler team, and he said that they were certified on September 28, 2001. He said that he was called to the 16th Avenue location to perform a vehicle search on a black Monte Carlo. He testified that the dog alerted him to the passenger's side door, by scratching, which informed him that the dog detected an odor of narcotics coming from the vehicle. Sergeant Spencer testified that he opened the passenger side door of the Monte Carlo, and the dog immediately went to the rear passenger side floorboard and indicated again on a sack, which contained a large amount of money. He said the dog also alerted him to the center console of the vehicle, where he found a bag of white powder that later tested positive for cocaine. Sergeant Spencer said that it is common for money to get contaminated with the scent of narcotics, which was why the dog alerted him to the money. He testified that he also found dryer sheets in the car, which drug dealers believe mask the scent of the narcotics.

Donna Flowers testified, as an expert in forensic chemistry, that she works at the Tennessee Bureau of Investigations ("TBI") Crime Laboratory and she analyzes substances that various law enforcement agencies submit for the presence of controlled substances or drugs. Flowers said that she analyzed the white powder in this case, and she concluded that the powder was cocaine, a schedule two controlled substance, and it weighed 59.2 grams.

Scott Cherry, a land surveyor, testified that he owns his own business and one of the primary functions of that business is to conduct engineering surveys. He identified a map from the Metro Planning Commissioner and said that it is normal procedure to rely on such a map. He testified that a police officer took him to the location of the search warrant, 1612 16th Avenue, and he measured the distance from the Wharton School to that location. Cherry testified that he determined the property lines of the school, and he used a Global Positioning System ("GPS") to measure from two corners of the school property line to the location at 1612 16th Avenue. He admitted that he does not have specialized training in the use of GPS but an employee at his business received such training and that employee taught him how to use the GPS system. He said that he uses this equipment about three or four times per week. Cherry testified that, based on his two measurements of the shortest distance and the distance from the corner of the school property, the distances were 939 feet and 947 feet from the location at 1612 16th Avenue[1]. He said that the measurements were accurate to within about one inch. On cross-examination, Cherry testified that the Wharton School is not visible from the location on 16th Avenue. He agreed that between the 16th Avenue location and the school property there is 17th Avenue, 18th Avenue, two alleys, and four rows of houses.

---

[1]Tennessee Code Annotated section 39-17-432 provides for enhanced punishment for drug offenses that occur on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, or secondary school.

Based upon this evidence the jury found the Defendant guilty of possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone and of possession of a firearm with the intent to employ it in the commission of or escape from an offense. The trial court sentenced the Defendant to thirty-six years, at 100%, for the possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone and three years, at 35%, for the possession of a firearm with the intent to employ it in the commission of or escape from an offense, and ordered that the sentences run concurrently.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred by denying the Defendant's motion to suppress; (2) the evidence is insufficient to support the Defendant's convictions; (3) the trial court erred in admitting the testimony of a surveyor pertaining to the use of GPS in determining the distance between the location of the offense and the real property that comprises Wharton School; and (4) the trial court erred when it sentenced him.

## A. Motion to Suppress

Pretrial, the Defendant filed a motion to suppress the weapon found in the Defendant's vehicle. As grounds, the Defendant alleged: (1) the law enforcement officers lacked any authority to search the Defendant; and (2) the law enforcement officers entered the vehicle without authority and without a warrant. Specifically, the Defendant argues that the search conducted of him and the subsequent search of the vehicle was warrantless, nonconsensual, and did not fall within any of the recognized exceptions to the Fourth Amendment protection against unreasonable searches and seizures and, as such, that all evidence derived from that search is inadmissible. The trial court conducted an evidentiary hearing and denied the motion. The trial court held:

> My recollection . . . is that once an individual denies any interest in the automobile, they have the right to search and to use anything, even though he might come along later and prove that it was his automobile or that he had interest in the automobile.
>
> . . . .
>
> And the proof right now before me is that everybody out there denied anything to do with the automobile. That's the proof before me.
>
> . . . .
>
> [T]wo officers have testified that everybody said they didn't have anything to do with that vehicle, whose automobile is that? I don't know, is what they said. Then later on this gentleman says, after the search, this gentleman says it's my mother's automobile. That's where we are as far as the automobile is concerned.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this Court reviews de novo. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Article I § 7 of the Tennessee Constitution provides that:

> [P]eople shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Both of these constitutional provisions are intended to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)).

### 1. Stop of the Defendant

Under both federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence obtained from such a seizure should be suppressed unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). However, should the search or seizure fall into one of these narrow exceptions, the fruits of that

search and seizure may be properly admitted into evidence. State v. Shaw, 603 S.W.2d 741, 743 (Tenn. Crim. App. 1980). One such exception is the "stop-and-frisk situation," Terry v. Ohio, 392 U.S. 1, 19 (1968), whereby an officer may make an investigatory stop when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Id.; State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

We must first determine whether the detention of the Defendant by the police officer amounted to a seizure. If so, we must then determine whether the officer possessed an articulable reasonable suspicion for an investigatory stop under Terry and its progeny. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16; State v. Hord, 106 S.W.3d 68, 70 (Tenn. Crim. App. 2003). The Supreme Court stated that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980); Hord, 106 S.W.3d at 71. In the case under submission, it is clear that the Defendant was "seized" within the meaning of the State and Federal Constitutions. Officer Jones testified that he ordered the Defendant to return to the apartment, made the Defendant lay on the ground, and handcuffed the Defendant. Therefore, it is clear that the Defendant was "seized" within the meaning of the Terry decision. Thus, for the seizure and subsequent search of the Defendant to be constitutionally permissible, the officer must have had reasonable suspicion, supported by articulable facts, that the Defendant had committed, or was about to commit a criminal offense.

Initially, we must acknowledge the less demanding standard of "reasonable suspicion," as compared with "probable cause." Reasonable suspicion "can be established with information that is different in quantity or content than that required to establish probable cause [and] . . . can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990); see also Yeargan, 958 S.W.2d at 632. In evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417 (1981); Watkins, 827 S.W.2d at 294. "This [may] include . . . but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." Watkins, 827 S.W.2d at 294; see also Cortez, 449 U.S. at 418. Also, a court must consider "the rational inferences and deductions that a trained officer could draw from the facts and circumstances known to him [or her]." Watkins, 827 S.W.2d at 294; see also Terry, 392 U.S. at 27 n.23.

In our view, under this totality of the circumstances test, Lieutenant Jones's warrantless seizure and search of the Defendant was permissible as a "stop and frisk" exception to the warrant requirement. When Lieutenant Jones arrived at the apartment building where a search warrant was to be executed, he observed the Defendant and three other men on the stoop of another apartment in the building, gambling with dice. It was the lieutenant's responsibility to control these four men while the other officers searched apartment C. Controlling these men was necessary to ensure the

other officers' safety. As Lieutenant Jones approached these men to control them, the Defendant began to put something in his pockets and walk away from the lieutenant. The Defendant then began to run down the street, and the lieutenant drew his gun and ordered the Defendant to get on the ground. The Defendant went about fifty yards, then stopped, and returned to the apartment. The Defendant's behavior established a reasonable suspicion that the Defendant was engaged in unlawful conduct, therefore, Lieutenant Jones was justified in ordering the Defendant to return to the apartment. Further, Officer Johnson testified that he "did a pat down" search of the Defendant for officer safety, and he noticed a bulge in the Defendant's pants. The officer removed the bulge which was $5921 in currency, and $2000 of that amount was wrapped in a white bag with rubber bands around it. We conclude, therefore that the search of the Defendant was permissible based on the "stop-and-frisk" exception to the warrant requirement. Accordingly, we must next determine whether the subsequent search of the Defendant's vehicle was also permissible.

## 2. Search of the Vehicle

The Defendant further contends that the police officers had no authority or basis to conduct a search of his car. Our Supreme Court has previously held that "a canine sweep around the perimeter of a vehicle which has been legally detained does not constitute a search, and thus, does not require probable cause or reasonable suspicion . . . ." State v. England, 19 S.W.3d 762, 764 (Tenn. 2000); see also Timothy Rathers v. State, No. W2000-02177-CCA-R3-PC, 2002 WL 1549771, at *6 (Tenn. Crim. App., at Jackson, Jan. 18, 2002), *no perm. app. filed*. In order to find that an officer had probable cause to search a vehicle based upon a positive alert by a trained drug detection dog, the dog's reliability must be established. Id. at 768; see also State v. John David Smith, No. W2003-01200-CCA-R3-CD, 2004 WL 737532, at *4 (Tenn. Crim. App., at Jackson, April 6, 2004), *perm. app. denied* (Tenn. 2004). This includes consideration of the dog's training, the officer's training and experience with the dog, and the record of false negative and false positive alerts. Id.

At trial, Officer Johnson testified that he was present when Lieutenant Jones inquired about the vehicle parked out front, and Officer Johnson said that there was no answer from any of the men about the vehicle. Based on their findings from the initial search of the Defendant, including a key that fit the vehicle, the officers subsequently contacted the K-9 unit to perform a sweep on the vehicle. At trial, Officer Spencer testified about Rocky's training and his own training as a handler of K-9 dogs. The officer stated that Rocky was assigned to him in 2001, and he and Rocky are recertified every year as a K-9 handler team by the United States Police K-9 Association. We conclude that, since training and reliability were established, the police had probable cause to search the vehicle upon the canine's alert on the passenger's door. Id. at 768-69. This issue is without merit.

## B. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to support his convictions for possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine

in a Drug-Free School Zone and of possession of a firearm with the intent to employ it in the commission of or escape from an offense. Specifically, the Defendant contends that the evidence is insufficient to support a finding of constructive possession of the automobile or its contents because no one saw the Defendant in or near the vehicle and there is no evidence that the Defendant attempted to exercise control over the automobile.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

### 1. Possession with the Intent to Sell Twenty-six (26) Grams or More of a Substance Containing Cocaine in a Drug-Free School Zone

To convict the Defendant of the offense of possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone, the State was required to prove that the Defendant: (1) knowingly possessed a substance containing cocaine within one thousand (1000) feet of real property that comprised a public or private school; (2) with the intent to sell; and (3) the amount of the substance containing cocaine possessed equaled or exceeded twenty-six grams. Tenn. Code Ann. §§ 39-17-417 (i)(5), -432 (b).

We must first determine whether the State established beyond a reasonable doubt that the Defendant knowingly possessed a substance containing cocaine within 1000 feet of a school zone. Tennessee Code Annotated section 39-17-418(a), prohibiting possession of a controlled substance, "is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." State v. Ross, 49 S.W.3d

833, 845 (Tenn. 2001). Constructive possession of a drug is based upon the power and intention to exercise dominion and control over the drug, either directly or through others. Id. "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" Id. at 845 (quoting State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996) (citations omitted)). "As such, although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." Id. (citation omitted).

Viewing the evidence in the light most favorable to the State, the evidence proves that the Defendant had constructive possession of the substance containing cocaine that was found in the Monte Carlo. See State v. Lonnie Walter Hurd, No. E2002-00832-CCA-R3-CD, 2003 WL 22303083, at *4 (Tenn. Crim. App., at Knoxville, Oct. 8, 2003), *no perm. app. filed*; see also State v Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) (holding that "[k]nowledge may be inferred from control over the vehicle in which the contraband is secreted"). After conducting a legal search of the Defendant, officers found a key to the Monte Carlo in his pocket. After a K-9 dog alerted to the presence of drugs in the Monte Carlo, the officers then conducted a legal search of the vehicle using the Defendant's key. When the officers searched the interior of the vehicle, they found a Sprint cell phone bill addressed to the Defendant. The Monte Carlo sales receipt was also found in the vehicle and was signed by the Defendant's mother, who was not present at the time these events occurred. The officers found a large quantity of money and a bag containing cocaine in the car. From this evidence, we conclude that a rational trier of fact could have found that the Defendant was in constructive possession of the Monte Carlo and its contents. Further, Scott Cherry testified that, according to his two GPS measurements, the distance to the school from the property was between 939 feet and 947 feet. Therefore, we conclude that there was sufficient evidence that the Defendant knowingly possessed cocaine within a Drug-Free School Zone.

Next, we must determine whether the State established beyond a reasonable doubt that the Defendant had the intent to sell the cocaine. When the police officers searched the Defendant's vehicle, they found a bag containing between fifty and sixty grams of cocaine, approximately $38,000 in cash, three cell phones, drug scales, baggies, paperwork on the vehicle, and dryer sheets. Lieutenant Jones and Officer Johnson testified that these items are consistent with common characteristics of people who possess drugs to sell. "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419; see also State v. Samuel L. Giddens, No. M2002-00163-CCA-R3-CD, 2004 WL 2636715, at * 4 (Tenn. Crim. App., at Nashville, Nov. 15, 2004), *no perm. app. filed*. We conclude that this evidence is sufficient for the jury to conclude beyond a reasonable doubt that the Defendant possessed the cocaine with the intent to sell it.

Finally, we must determine whether the State showed beyond a reasonable doubt that the substance containing cocaine possessed by the Defendant equaled or exceeded twenty-six grams.

Lieutenant Jones and Officer Johnson both testified that they recovered between fifty and sixty grams of cocaine from the Defendant's car. Flowers testified that she analyzed the substance in this case and concluded that it was cocaine and it weighed 59.2 grams. The evidence clearly shows that the amount of cocaine possessed by the Defendant exceeded twenty-six grams.

We conclude that the evidence is sufficient to prove that the Defendant possessed more than twenty-six grams of a substance containing cocaine within 1000 feet of a Drug-Free School Zone. Accordingly, this issue is without merit.

**2. Possession of a Firearm with the Intent to Employ it in the Commission of or Escape from an Offense**

A person commits the crime of possession of a firearm in the commission of or escape from an offense when the person "possesses any deadly weapon with intent to employ it in the commission of or escape from an offense." Tenn. Code Ann. § 39-17-1307(c)(1) (2003)[2]. Therefore, in order for the State to convict the Defendant of this crime, it had to prove beyond a reasonable doubt that the Defendant possessed a deadly weapon, and the Defendant possessed the deadly weapon with the intent to employ it in the commission of or escape from an offense. Additionally, this Court has stated that "[p]ossession may be actual or constructive." State v. Steven D. Pittman, No. M1999-00320-CCA-R3-CD, 2000 WL 374755, at *3 (Tenn. Crim. App., at Nashville, Apr. 7, 2000), *perm. app. dismissed* (Tenn. July 31, 2000). Constructive possession is essentially the ability to reduce an object to actual possession. Id.

In State v. Brentol Calvin James, No. M1999-02533-CCA-R3-CD, 2000 WL 1763686 (Tenn. Crim. App., at Nashville, Nov. 30, 2000), *no perm. app. filed*, this Court examined what is required to sustain a conviction of possession of a weapon during the commission of an offense. James, 2000 WL 1763686, at *3-4. This Court found that, for a conviction, "the State additionally had to prove that the appellant possessed the weapon with the intent to employ it in the commission of, or escape from, an offense." Id. at *4. This Court determined that the only evidence of the appellant's "intent to employ" was an officer's testimony that the appellant's co-defendant was leaning into the appellant's car when police approached. Id. This Court concluded that "the State failed to prove that the appellant possessed the pistol with the intent to employ it during the commission of or escape from an offense." Id.

Similarly, in the case under submission, the State proved that the Defendant constructively possessed the deadly weapon. The Defendant possessed the key to the car in which the handgun was located, and the Defendant could have obtained actual possession of the handgun at any time. In order to convict the Defendant, the State additionally had to prove that the Defendant possessed the

---

[2]Although the offense occurred in 2001, we note that the 2003 statute is identical to the statute in effect at the time of the offense.

weapon with the intent to employ it in the commission of, or escape from, an offense. Based on this record, there was no evidence of the Defendant's "intent to employ" the weapon. The weapon was not found in the initial search of the vehicle but was subsequently found between the driver's seat and the center console of the vehicle. There is no evidence that the Defendant attempted to obtain or use the weapon. We conclude that the evidence is insufficient to sustain the Defendant's conviction for possession of a weapon with the intent to employ it during the commission of or escape from an offense, and, therefore, we reverse the Defendant's conviction for this offense.

### C. Admission of Testimony

The Defendant contends that the trial court erred when it allowed a surveyor to testify about the distance between the location where the Defendant possessed cocaine and the real property that comprises Wharton School. Specifically, the Defendant contends that the testimony of Scott Cherry that the Defendant was within 1000 feet of the real property that comprises Wharton School when he was in possession of cocaine is inadmissible because Cherry was not an expert on GPS devices, and such testimony requires a scientific foundation. The State contends that the foundation for the admission of this evidence was properly laid, and the evidence is admissible. At trial, the following exchange took place between defense counsel and the trial court about Cherry's testimony:

> THE COURT: [Counsel], as in the situation with DUI's, the Court has said time and time again that it is not necessary for the operator of a drug testing unit to have the underlying expertise as to the system. He must only be an operator and this man has testified that he is qualified to operate this system.
>
> [COUNSEL]: Your Honor, I respectfully would distinguish those cases, I mean, they did think Sensing and others introduced reliability about particular instruments. And I don't think there was a question about the underlying science. Here there is a question about the underlying - -
>
> THE COURT: There has always been a question about the underlying science on breath meters. As long as I can remember, as long as they have been in use, there have been questions about the underlying science. And the Court's have said that it is not necessary for the operator to know the underlying science of the meter.

Questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. McDaniel v. CSX Transportation, Inc., 955 S.W.2d 257, 263-64 (Tenn. 1997). Pursuant to Rule 702, Tennessee Rules of Evidence, "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Rule 703, Tennessee Rules of Evidence, requires the expert's opinion to be supported by trustworthy facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." The trial court may apply, in its discretion, the

following factors to determine reliability: (1) whether the evidence about which the expert is testifying has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether the evidence is generally accepted in the community involved in the body of specialized knowledge; and (5) whether the expert's research in the field has been conducted independent of litigation. McDaniel, 955 S.W.2d 257 at 265; see also State v. Stevens, 78 S.W.3d 817, 834 (Tenn. 2002). The determining factor is "whether the witness's qualifications authorize him or her to give an informed opinion on the subject in issue." Stevens, 78 S.W.3d at 834. A trial court's ruling on the admissibility of such evidence may be overturned on appeal only if the discretion is exercised arbitrarily or abused. Id. at 832.

The record reflects that Cherry has been a licensed surveyor for sixteen years, and he passed a sixteen hour test that covered all aspects of surveying. He has also taken courses in surveying and civil engineering. He owned his own surveying business for twelve years, and his business did engineering surveys for new roads, sewers, subdivisions, and stores. Cherry used a Tremble 4000 GPS device to measure the distance between 1612 16th Avenue North and the Wharton School. Cherry testified that GPS was developed by the Department of Defense and is based on twenty-four satellites that orbit and result in very precise measurements. He said that one of his employees received a forty-hour specialized training course to use the equipment, and that employee taught him how to use the equipment. Cherry said that he had used the system for seven years, and it is accurate to within one and a half inches in three miles. Based on the record, the testimony of this witness was thorough and sufficient to qualify him to testify in the field of surveying and measuring distances, even though he is not an expert on GPS. We conclude that the trial court did not abuse its discretion in allowing the testimony of this witness to prove that the offense occurred within one thousand feet of the real property that comprises Wharton School. This issue is without merit.

### D. Sentencing

The Defendant, relying on Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), contends that the trial court erred when it enhanced his sentence above the presumptive minimum. The State contends that the Defendant has waived this issue. Additionally, the State contends that the Defendant has admitted all of the enhancement factors applied by the trial court, and, therefore, Blakely has no effect on the Defendant's sentence. The record reflects that the trial court found, and the parties agreed, that the Defendant was a Range II multiple offender. Additionally, the trial court enhanced the Defendant's convictions based upon three enhancement factors. First, the trial court found that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(2) (2003). The trial court also found that the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See Tenn. Code Ann. § 40-35-114(9). Further, the trial court found that the felony was committed while the Defendant was on probation from a prior felony conviction. See Tenn. Code Ann. § 40-35-114(14). The trial court determined that no mitigating factors applied. The trial court sentenced the Defendant to

thirty-six years, at 100%, for possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone.[3]

When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, the Defendant was convicted of a Class A felony. The sentence range for a Class A felony, Range II offender, is twenty-five to forty years. Tenn. Code Ann. § 40-35-112(b)(1) (2003). In calculating the sentence for a Class A felony, the presumptive sentence is the midpoint of the range, in the absence of enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210 (c) (2003). If there are enhancement factors but no mitigating factors, the sentence must be set at or above the midpoint of the range. Tenn. Code Ann. § 40-35-210(d). If there are mitigating factors but no enhancement factors, the trial court must set a sentence at or below the midpoint of the range. Tenn. Code Ann. § 40-35-210(d). If there are both mitigating and enhancement factors, the trial court must adjust the sentence based on the weight it assigns to each factor. Tenn. Code Ann. § 40-35-210(d).

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have

_____

[3]Because we have reversed the conviction for possession of a weapon with the intent to employ it during the commission of, or escape from, an offense, we refrain from discussing the appropriateness of the sentence imposed for that offense.

-14-

preferred a different result.  See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  We note that the defendant bears the burden of showing that the sentence is improper.  Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

The United States Supreme Court's recent opinion in Blakely calls into question the continuing validity of our current sentencing scheme.  In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors.  124 S. Ct. at 2537.  The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  Id.  Finally, the Court concluded that "every defendant has a *right* to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment."  Id. at 2539.  This Court has held that Blakely violations are subject to a Constitutional harmless error analysis.  State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *24 (Tenn. Crim. App., at Nashville, Nov. 30, 2004), *no perm. app. filed*.  "While it is true that Blakely concerns the inviolate right to a jury trial, the cornerstone upon which our criminal justice system was constructed, we cannot say that a jury's failure to determine an enhancement factor 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'"  Id. (quoting Needer v. United States, 527 U.S. 1, 9 (1999)).  Thus, before we modify a defendant's sentence, we will "review the Blakely errors to determine whether they were harmless beyond a reasonable doubt."  Id.; see Chapman v. California, 386 U.S. 18, 24 (1967).

First, we note that the Defendant has not waived this issue. We have held that, because Blakely announced a new rule, any defendant whose case was still on direct appeal could raise this issue.  Walters, 2004 WL 2726034, at *19.  We explained that, although Blakely was the Supreme Court's explanation of its prior decision in Apprendi, the Tennessee Supreme Court had previously announced that the rule in Apprendi did not affect our State's sentencing scheme.  Id.  As a result, the mandate of Blakely created a new rule in Tennessee.  Id.  Furthermore, in Walters, this Court held that Blakely could be raised in all cases on direct appeal, because a violation of this mandate was plain error arising from the deprivation of the Constitutional right to a jury trial.  Id.; see also State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *7–10 (Tenn. Crim. App., at Nashville, Oct. 8, 2004), *no perm. app. filed*.  Thus, because the Defendant did not waive this issue, the question becomes whether the sentence imposed by the trial court violates the United States Supreme Court mandate in Blakely.

The trial court applied enhancement factor (2) based on the Defendant's admission in the presentence report of previous criminal behavior, specifically, that he had used marijuana on several occasions.  We note that this Court has held that there is a distinction for Blakely purposes between previous criminal convictions and a previous history of criminal behavior.  State v. Michael Paul Mondell, No. E2003-02791-CCA-R3-CD, 2005 WL 378978, at *4 (Tenn. Crim. App., at Knoxville, Feb. 17, 2005), *no perm. app. filed.*  In that case, we held the trial court improperly applied this

enhancement factor based upon the Defendant's previous history of criminal behavior when the Defendant had no prior record of criminal convictions. Accordingly, in the case under submission, the trial court could not properly apply this enhancement factor based upon the Defendant's previous marijuana use unless this enhancement factor was admitted by the Defendant or submitted to a jury.

The record reflects that because the Defendant's two prior convictions were used to establish that he was a Range II multiple offender, the court's application of factor (2) was necessarily based upon the Defendant's statement to the presentence report officer that he used marijuana on multiple occasions. We conclude that the trial court erred in its application of enhancement factor (2) because the Defendant's admission to prior drug use in the pre-sentence report does not contain "sufficient guarantees of trustworthiness . . . without offending Blakely." State v. Abel Torres, No. M2004-00559-CCA-R3-CD, 2005 WL 292431, at *8 (Tenn. Crim. App., at Nashville, Feb. 4, 2005), *no perm. app. filed*. Therefore, the trial court's application of this enhancement factor was error, and we have concluded that the error was not harmless beyond a reasonable doubt.

The trial court also applied enhancement factor (9), that the Defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," the trial court applied this factor because the Defendant committed this crime less than two years after he was previously convicted of possession of cocaine, and "he was back on the street doing the same thing [a]s what he was doing on some form of release . . . ." We conclude that this factor was not admitted by the Defendant or found by a jury. Furthermore, as it is subject to Blakely, we conclude that the trial court erred when it applied this enhancement factor. This error, however, was harmless beyond a reasonable doubt. The Defendant's presentence report, which was admitted as an exhibit without objection during the sentencing hearing, indicates that the Defendant has had his probation revoked on one occasion. The Defendant was convicted of selling drugs and was sentenced to eight years on probation on July 16, 1998. This Defendant was found guilty of a probation violation, and he was ordered to serve the sentence in prison. Further, the Defendant was also convicted of possession of cocaine on May 17, 1999 and was sentenced to twelve years. Accordingly, we conclude that the trial court's application of this factor was harmless beyond a reasonable doubt.

Similarly, we conclude that the trial court erred when it applied enhancement factor (14). Although the Defendant's brief concedes that he was on probation, there is no evidence in the record that the Defendant admitted this factor during his trial or sentencing hearing. We conclude, therefore, that this factor was not admitted by the Defendant or found by a jury. We therefore conclude that the trial court erred when it applied this enhancement factor. This error, however, was harmless beyond a reasonable doubt because the Defendant's presentence report, which, as stated above, was admitted as an exhibit without objection during the sentencing hearing, indicates that the Defendant was on probation for selling drugs at the time this offense occurred. Accordingly, we conclude that the trial court's erroneous application of this factor was harmless beyond a reasonable doubt.

The trial court's erroneous application of two enhancement factors were harmless beyond a reasonable doubt, and, therefore, we conclude that the Defendant's sentence need not be modified. This issue is without merit.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we reverse the Defendant's conviction and sentence for possession of a firearm with the intent to employ it in the commission of or escape from an offense, and we affirm the Defendant's conviction and sentence for possession with the intent to sell twenty-six (26) grams or more of a substance containing cocaine in a Drug-Free School Zone.

_____
ROBERT W. WEDEMEYER, JUDGE